UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARON M. COLE,<br><br>                Plaintiff,<br><br>     vs.<br><br>CAROLYN W. COLVIN Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                Defendant. | No. 1:13-cv-1368-SEB-TAB |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

    **I.**    **Introduction**

    Plaintiff Sharon Cole brings this appeal challenging the denial of her claim for Social Security disability insurance benefits and Social Security income benefits. Cole's appeal raises four issues: (1) whether substantial evidence supports the ALJ's finding that Cole did not meet listing 12.04 for depression or listing 12.06 for anxiety; (2) whether the ALJ erred in failing to summon a medical advisor; (3) whether the ALJ's credibility determination is patently erroneous; and (4) whether substantial evidence supports the ALJ's step five determination that Cole could perform some jobs in the national economy. With the benefit of briefing and oral argument, the Magistrate Judge recommends that Cole's brief in support of appeal [Filing No. 18] be denied.

    **II.**    **Facts and Findings**

    Cole first applied for disability insurance benefits and supplemental security income in December 2007. The application was denied and Cole did not seek further review of the

agency's decisions. The denial became final and binding on May 8, 2008, when reconsideration was denied. In December 2010, Cole applied for disability and social security income again alleging a disability onset date of January 1, 2008. The ALJ denied Cole's implicit request to reopen her original application and found the relevant time period for the purposes of the December 2010 application to be from May 9, 2008 until May 25, 2012.

In a May 25, 2012, decision the ALJ found (1) at step one, Cole had not engaged in substantial gainful activity despite the fact that she earned $7,216.40 in 2010 and $5,108.67 in 2011 working 25 hours a week during her 3 to 4 shifts a week [Filing No. 15-2, at ECF p. 23]; (2) at step two, she was found to have back pain with mild degenerative disc disease, major depressive disorder, panic disorder, and opiod dependence. [Filing No. 15-2, at ECF p. 23.] While Cole's medical records also indicate treatment for wrist pain and gastroesophageal reflux disease, the ALJ found that these impairments did not cause more than a minimal degree of functional loss, and were not severe within the meaning of the regulations. [Filing No. 15-2, at ECF p. 23.] (3) At step three, the ALJ found that Cole's back pain did not meet listing 1.04 and that her mental impairments singly or in combination did not meet listings 12.04, 12.06, and 12.09. (4) At step four, the ALJ assigned Cole an RFC that limited her to medium work with additional limitations:

> [Cole] can lift/carry fifty pounds occasionally and twenty-five pounds frequently; sit six of eight hours; and stand/walk six of eight hours. She should avoid concentrated exposure to work hazards, such as unprotected heights and dangerous moving machinery. She should never climb ladders, ropes, or scaffolds. She can occasionally climb ramp and stairs. She can occasionally balance, stoop, crawl, crouch, and kneel. Secondary to mental limitations, she is able to understand, remember, and carry out short, simple instructions. She can sustain attention for two-hour segments of time for simple tasks. She can tolerate contact with coworkers, supervisors, and limited brief and superficial contact with the general public. She is able to adapt in work settings involving routine adjustments for simple, routine, repetitive type task work.

[Filing No. 15-2, at ECF p. 25.] Using this RFC, the ALJ found that Cole could not perform past relevant work, and (5) in referencing the Medical-Vocational Guidelines as a framework, the ALJ noted that Cole would be found not disabled under the grid regardless of whether her skills were transferable. [Filing No. 15-2, at ECF p. 31.] The ALJ then questioned a vocational expert concerning Cole's ability to find jobs in the national economy given her exertional and nonexertional impairments. The VE found that Cole could perform jobs as a janitor, stock handler, laundry worker at the medium level jobs; house keeper, laundry worker, inspector at light level jobs; and packager, assembler, and inspector at sedentary level jobs. [Filing No. 15-2, at ECF p. 32.] The ALJ concluded that Cole was not disabled. [Filing No. 15-2, at ECF p. 33.]

### III. Discussion

#### A. Standard of review

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

B.  *Listings 12.04 and 12.06*

Cole argues that the ALJ erred in concluding that she did not meet listings 12.04 and 12.06 for depression and anxiety disorders.  In making this argument, Cole points to eight pieces of evidence that the ALJ allegedly ignored in its entirety:

- A February 6, 2007, Meridian Services mental health clinic psychotherapy session [Filing No. 15-8, at ECF p. 34];
- A November 6, 2007, Meridian Services mental health clinic assessment [Filing No. 15-9, at ECF p. 32];
- A November 15, 2007, psychotherapy session [Filing No. 15-8, at ECF p. 6-7];
- A November 27, 2007, psychotherapy session [Filing No. 15-9, at ECF p. 27];
- A December 28, 2007, psychotherapy session [Filing No. 15-9, at ECF p. 25];
- A January 30, 2008, psychotherapy session [Filing No. 15-9, at ECF p. 3];
- A September 7, 2010, Meridian Services psychotherapy session [Filing No. 15-8, at ECF p. 52];
- A November 8, 2010, Meridian Services assessment [Filing No. 15-8, at ECF p. 2-3].[1]

According to Cole, this evidence proves she is totally disabled.  The Commissioner responds that the 2007 to 2008 evidence is precluded from consideration by a final binding decision from May 8, 2008.  [Filing No. 21, at ECF p. 3-4.]

The ALJ did not err in ignoring evidence predating the May 8, 2008, decision because this evidence falls within the time period of the previously adjudicated application.  Unless a fully adjudicated case is reopened, claim preclusion under Social Security prevents a specific claim from being raised again during a time period already adjudicated.  Similarly, issue preclusion prevents relitigation of an issue within the already adjudicated time period for each claim.  *Rucker v. Shalala*, 894 F.Supp. 1209, 1217 (S.D. Ind. 1995).  Here, the ALJ denied reopening Cole's case as there was no new or material evidence and no evidence indicating error

---

[1] Cole argues that the ALJ did not discuss a November 18 evaluation.  There is no evaluation from November 18.  However, there is an evaluation dated November 8 that coincides with Cole's citation to the record.  [Filing No. 15-8, at ECF p. 2-3.]

4

or fraud. [Filing No. 15-2, at ECF p. 20.] *See Rucker*, 894 F.Supp. at 1217 (A case may be reopened "if there is new and additional evidence presented for the time period that was in question during the initial adjudication."). Cole does not contest the ALJ's decision to deny her reopening request.

Moreover, the ALJ explicitly held on the first page of her decision that Cole's previous application was administratively final and binding through May 8, 2008, so the relevant time period for the purposes of Cole's application commenced May 9, 2008. [Filing No. 15-2, at ECF p. 20.] Thus, the medical reports relevant to her present case span from May 9, 2008, to May 25, 2010. The ALJ is only required to consider the evidence relevant to that time period, which does not include the February 2007 to January 2008 medical reports. *See Mullins v. Astrue*, No. 4:06-CV-0159-DFH-WGH, 2008 WL 360793, at *1 (S.D. Ind. Feb. 8, 2008) (requiring a claimant to show that he was disabled after the date of his last disability determination). While Cole argues that the ALJ failed to mention her low GAF scores, which prove she is disabled, these GAF scores primarily occurred before May 9, 2008, a time in which the ALJ had already made a finding of no disability. To now request that the Court review evidence that has already been considered in an ALJ's prior finding would be inappropriate.

Nevertheless, Cole points to evidence predating the May 8, 2008, decision that is mentioned in the ALJ's 2012 decision. [Filing No. 26, at ECF p. 3.] It is true that the ALJ specifically mentions predated evidence. But the entirety of this reference consists of two sentences of the decision that appear to serve as background information. [Filing No. 15-2, at ECF p. 20.] Such a passing reference is not a basis for remand. *See McKinzey v. Astrue*, 641 F.3d 884, 893-94 (7th Cir. 2011) ("Although we have noted some problems with the way the ALJ articulated her unfavorable determination[,]…we have also concluded that remanding this

case to the agency would serve no purpose in light of the overwhelming evidence supporting the ALJ's decision.").

This is particularly true given that the ALJ relied on medical evidence from 2010 and 2011 to support her ultimate finding that Cole did not meet a listing. The ALJ considered evaluations from October 2010 and December 2010, noting Cole felt overwhelmed by work, college, and her relationship, but that her relationship was improving and that she hosted 15 people for Thanksgiving. [Filing No. 15-8, at ECF p. 43, 48.] The ALJ relied on a January 16, 2011, Nicole Caldwell consultative examination where Dr. Caldwell found no signs of psychotic features and found Cole to be stable. [Filing No. 15-9, at ECF p. 38.] The ALJ noted that Cole was in full sustained remission from her opiod dependence by November 2010. In February 2011, Cole had a GAF rating of 50 and 53, but her memory and adaptive functioning were largely intact. [Filing No. 15-9, at ECF p. 50, 52.] The ALJ also considered evidence from March 2011 and May 2011, when Cole was still working part-time and attended college full-time. [Filing No. 15-11, at ECF p. 23, 33.]

The remaining medical reports that the ALJ allegedly ignored include a September 2010 psychiatric evaluation, where Cole admits she is ready to explode or have a nervous breakdown because she was working four days a week and a full-time college student. [Filing No. 15-8, at ECF p. 52.] Her therapist suggested using deep breathing techniques for agitation. [Filing No. 15-8, at ECF p. 23.] The ALJ does not address this evidence. But, this is not the only time where Cole felt overwhelmed. The ALJ's decision discussed other reports where Cole felt overwhelmed from school, work, and her relationship as well as her therapist's recommended treatment. [Filing No. 15-2, at ECF p. 27, 28.] The ALJ is not required to mention every piece of evidence so long as she builds an accurate and logical bridge from the evidence to the

conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ built that bridge when she considered similar medical reports. Thus, the ALJ did not err in failing to discuss Cole's September 7, 2010, examination.

The ALJ also did not discuss the November 8, 2010, evaluation. However, the November 8, 2010, evaluation does not note any evidence that would result in a disability finding. The therapist assessed Cole's GAF at 50 but also indicated that Cole's thoughts were organized and logical with no evidence of psychosis, magical thinking or ideas of reference. Cole was oriented to the date, president, and the governor. She was able to spell world backwards. While she could not subtract 7 from 100, her mood was antsy, and her insight poor to fair, she had fair judgment. [Filing No. 15-8, at ECF p. 3.] Nothing reported in this evidence points to a disability finding. *See Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (holding that an ALJ cannot ignore evidence that points to a disability finding). And while the November 8, 2010, evaluation does include a GAF score of 50, an ALJ is not required to determine the extent of an individual's disability based entirely on her GAF score.[2] *Id.; Bayless v. Astrue,* No. 11C3093, 2012 WL 3234044, at *16-17 (N.D. Ill. Aug. 6, 2012) (holding that an ALJ's failure to discuss multiple GAF scores did not require a remand so long as the ALJ relies on the medical record's underlying narrative to support her finding ).

Despite the fact that the ALJ did not consider these two evaluations, she still supported her finding that Cole did not meet or equal listing 12.04 or 12.06 with substantial evidence. The ALJ discussed each component of the paragraph B criteria in determining whether Cole met or

---

[2] Cole argues that the ALJ erred in considering Cole's GAF findings. While the GAF findings predating May 9, 2008 are precluded, the ALJ does mention some of the GAF findings after 2008. However, she relies on the medical record's underlying narrative to support her finding. This is appropriate. *See Denton,* 596 F.3d at 425.

equaled the listings.[3] To satisfy paragraph B, Cole must have had at least two of the following restrictions: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.04, 12.06. The ALJ found no marked restrictions.

The ALJ found that Cole had a mild limitation in daily living activities and at most a moderate limitation in social functioning. In determining Cole's daily living restrictions, ALJ considered Cole's testimony that she prepares meals with her spouse. [Filing No. 15-2, at ECF p. 50.] She also watches television, feeds and walks her dog, and goes on shopping trips. [Filing No. 15-6, at ECF p. 77.] In determining Cole's social functioning restriction, the ALJ reasoned that nothing in the medical record indicated that there was a significant limitation in Cole's ability to relate to others. Though Cole indicated that she did not like to be around crowds of people and felt suffocated by being around more than ten people, the ALJ observed that Cole was able to go to restaurants and eat without a problem, and could go to the store alone. [Filing No. 15-6, at ECF p. 54.] Cole also reported that she had a history of anger issues at work, but the ALJ noted that her former employer did not indicate that was a problem. [Filing No. 15-6, at ECF p. 27.]

The ALJ assigned at most a moderate degree of limitation in Cole's functional area of concentration, persistence, or pace. Cole reported that she had problems with memory, but she was able to follow a story on television and she can sit and watch a movie from beginning to end

---

[3] To meet listings 12.04 and 12.06 "the requirements of both [paragraph] A and B [must be satisfied], or [paragraph] C [must be satisfied]." 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.04, 12.06. Cole does not argue that she meets paragraph C criteria. And the Commissioner concedes that Cole satisfies the requirements of paragraph A, so only paragraph B's criteria is at issue.

without a problem. [Filing No. 15-6, at ECF p. 54.] No mental examinations showed any significant concentration deficit. [Filing No. 15-2, at ECF p. 24.] Moreover, the ALJ noted that there were no episodes of decompensation of extended duration. Because Cole did not have at least two marked limitations or one marked limitation and repeated episodes of decompensation each of extended duration under the paragraph B criteria, Cole did not meet listing 12.04 or 12.06. The ALJ sufficiently explained why Cole did not meet or equal listing and discussed the relevant medical evidence. Thus, the ALJ did not err and remand on this issue is not appropriate.

   *C. Summoning a medical advisor*

  Next, Cole argues that the ALJ relied on her own layperson opinion in lieu of summoning a medical advisor, specifically a psychologist, in determining that Cole's combination of impairments did not meet a medical listing. However, ALJ has discretion in deciding to summon a medical advisor. An ALJ should summon a medical advisor if she lacks sufficient information to adequately develop the record. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). However, if there is no showing that the ALJ disregarded relevant medical evidence contrary to her conclusions or failed to adequately explain how she reached her decisions, then the Court will defer to the ALJ's judgment. *See Thomas v. Astrue,* No. 1:09-cv-808-SEB-JMS, 2010 WL 2485556, at *5 (S.D. Ind. June 11, 2010).

  Here, the ALJ adequately explained how she reached her decision. The ALJ discussed Cole's mental health records from October 2010 to May 2011. She discussed Cole's feelings of being overwhelmed from attending school full-time, working part-time, and being in a relationship. The ALJ referenced an October 2010 evaluation where her therapist suggested she use a sleep song to help her sleep and continue to exercise to relieve anxiety. [Filing No. 15-8, at ECF p. 48.] Similarly, in March 2011, Cole's therapist recommended she continue relaxation

techniques and diversion activities like walking and deep breathing. [Filing No. 15-11, at ECF p. 35.] The ALJ also mentioned that Cole reported having difficulty controlling her mood swings in April 2011 but noted that Cole still continued college full-time and part-time work. [Filing No. 15-11, at ECF p. 28.]

The ALJ also discussed Cole's mental health diagnoses. The ALJ indicated that on January 16, 2011, Cole had been diagnosed as bipolar with psychotic features. However, during a January 16, 2011, evaluation, Dr. Caldwell did not find any signs of psychotic features during the examination. And while Cole was also diagnosed with anxiety and depression, Cole appeared stable and said that her medication helped her with both her anxiety and her flashbacks of childhood abuse. [Filing No. 15-9, at ECF p. 38.] In February 2011, Cole was diagnosed by consultative examiner F. Renee Vaux, Ph.D. with major depressive disorder and panic disorder with agoraphobia. Her GAF score at the time was 53. [Filing No. 15-9, at ECF p. 52.] Yet the ALJ also noted that Dr. Vaux found Cole's immediate, remote, and autobiographical memory skills were intact with only a slight impairment in recent memory skills. [Filing No. 15-9, at ECF p. 50.] The ALJ also mentioned that Dr. Vaux found Cole's adaptive functioning largely intact but that there were some deficits in her sustained mental effort and working memory. And Dr. Vaux indicated that Cole may have problems working with other people, so she may need additional supervision. [Filing No. 15-9, at ECF p. 51.]

There was sufficient information in the record for the ALJ to base her nonexertional finding without needing to summon a psychologist. The ALJ adequately explained her findings and confronted contradicting evidence. The Magistrate Judge finds no error in the ALJ's decision not to summon a medical advisor, and therefore, remand on this issue is not appropriate.

*D. Credibility determination*

Cole contends that the ALJ's credibility determination was patently erroneous as she used boilerplate language and ignored or even misinterpreted the evidence. Cole goes on to say that the ALJ failed to articulate any legitimate reason for her credibility determination and that the ALJ's decision is illogical. However, a fair reading of the ALJ's decision reveals the contrary.

An ALJ's credibility determination will be overturned only if it is patently wrong. *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir. 2008). That is not the case here. The ALJ considered Cole's subjective statements, objective medical evidence, Cole's daily activities, and third-party statements in making her credibility determination. The ALJ noted that Cole testified that she felt that there were three people living inside of her and she could not work due to difficulty with lifting, standing, and being around people. [Filing No. 15-2, at ECF p. 44, 46.] Cole indicated that she had significant leg and back pain, problems with her memory, difficulty around crowds, difficulty in the waiting room before the hearing because there were too many people, and she had no money for therapy. [Filing No. 15-2, at ECF p. 45-47, 49.] Cole also testified that she watches television, reads, sits, has coffee, lets the dog in and out, and does some household chores. She was able to cook side dishes for dinner but could not fry chicken or peel potatoes. She worked 25 hours a week and she felt like she needed to go back to therapy. [Filing No. 15-2, at ECF p. 50-54.]

However, the ALJ discounted Cole's testimony as being out of proportion to the record. She noted that objective evidence showed that Cole's depression, anxiety, and flashbacks to childhood abuse improved with medication. [Filing No. 15-9, at ECF p. 38.] And while she had some deficits in her sustained mental effort and working memory, her immediate, remote, and autobiographical memory skills were in large part intact, as was her adaptive functioning.

11

[Filing No. 15-9, at ECF p. 50-51.] Her opiod dependence was in full sustained remission. [Filing No. 15-11, at ECF p. 33.] There was no significant mention of panic attacks in the record, despite the fact that Cole alleged having panic attacks during a consultative examination. [Filing No. 15-2, at ECF p. 29.] While Cole testified that she felt as if there were three people in her head, the ALJ saw no mention of this in any treatment records as being discussed with the counselor. [Filing No. 15-2, at ECF p. 29.] Third-party written statements indicating that Cole had a tendency to be argumentative and depressed as well as fatigued and functionally limited were from Cole's friend and not consistent with the opinions and observations of the credible medical doctors. [Filing No. 15-2, at ECF p. 30; Filing No. 15-6, at ECF p. 83.]

Moreover, the ALJ considered evidence that Cole worked part-time and attended college full-time during the relevant time period. As the Commissioner noted at oral argument, Cole's part-time job was semi-skilled work and she did not quit her job due to her alleged impairments but because her employer would not allow her to apply lotion to a rash she had at the time. More important, her former employer reported that Cole had no difficulty getting along with supervisors and coworkers, was a team player, and followed directions.[4] [Filing No. 15-6, at ECF p. 26-28.] The ALJ also relied on this report.

The ALJ articulated legitimate reasons for discounting Cole's credibility and provided substantial evidence to support her finding that Cole's impairments were not as severe as Cole alleged. In the Magistrate Judge's view, the ALJ's credibility determination was not patently wrong and does not warrant remand.

---

[4] Despite Cole's impairments, she was able to engage in semi-skilled work to her employer's satisfaction. As noted by the Commissioner at oral argument, Cole certainly should have been able to perform the less demanding work suggested by the VE at the hearing.

### E. *Step-five determination*

Cole's final argument on appeal concerns the ALJ's step-five determination. Cole alleges that the ALJ erred in finding that Cole was capable of performing jobs in the national economy as the ALJ failed to adequately account for Cole's nonexertional impairments in her RFC finding. Specifically, Cole takes issue with the ALJ's limitation of simple, routine, repetitive-type task work because it does not address Cole's major depressive disorder and bipolar disorder with psychotic features, anxiety-panic disorder, and post trauma stress disorder. [Filing No. 18, at ECF p. 28.]

However, the ALJ's RFC determination did more than just limit Cole to simple, routine, and repetitive-type task work. The RFC incorporated recommendations from Dr. Vaux, who opined that Cole may have difficulty engaging in complex tasks requiring changing circumstances, interacting with customers, maintaining work pace, and attending to work tasks for an extended period of time. [Filing No. 15-9, at ECF p. 51-52.] The ALJ included these limitations, despite the fact that as recently as August 2011 Cole was working a semi-skilled job as a waitress with no indication that she had any difficulty completing her tasks, and had attended college full-time. [Filing No. 15-5, at ECF p. 33; Filing No. 15-6, at ECF p. 26, 27.]

The ALJ also limited Cole's interaction with the general public to brief and superficial contact. The RFC determination indicated that Cole could understand, remember, and carry out short, simple instructions and sustain attention for two-hour segments of time for simple tasks. The ALJ also noted that Cole could tolerate contact with coworkers and supervisors. In reviewing the ALJ's decision, the Magistrate Judge finds that the ALJ adequately accounted for Cole's nonexertional impairments in her RFC finding.

Moreover, the ALJ included in her hypothetical to the VE all of the nonexertional limitations, and the VE found a variety of jobs available in the national economy. [Filing No. 15-2, at ECF p. 55-56.] The VE found Cole capable of medium level work with the additional limitations including jobs as a janitor, stock handler, and laundry worker. The VE also found Cole capable of light level work with additional limitations as a housekeeper, laundry worker, and inspector. Cole was capable of performing sedentary level work with additional limitations as a packager, assembler, and inspector. [Filing No. 15-2, at ECF p. 32, 55-57.] The ALJ's RFC finding properly accounted for Cole's nonexertional limitations as did the ALJ's hypothetical questions to the VE concerning Cole's capabilities. Thus, the Magistrate Judge finds no error at step-five, and does not believe remand is appropriate on this issue.

## IV. Conclusion

The ALJ's findings are supported by substantial evidence and the Commissioner's decision should be affirmed. Thus, Cole's motion in support of appeal [Filing No. 18] should be denied. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 08/01/2014

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Eric Truett
OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION
eric.truett@ssa.gov

Lindsay C. Dunn
UNITED STATES ATTORNEY'S OFFICE
lindsay.dunn@usdoj.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov